CHRISTOPHER JOSEPH DESALVA (SBN 172209)
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
45-902 Oasis Street, Suite D, Indio, CA 92201
Telephone: (760) 447-0031 | Email: desalvalaw@gmail.com

Attorney for Petitioner
KEYLIN CAROLINA GOMEZ

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEYLIN CAROLINA GOMEZ,** | ) | Case No. _______________ |
| | ) | |
| Petitioner, | ) | **VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR ORDER TO SHOW CAUSE WITHIN THREE (3) DAYS; DECLARATORY RELIEF** |
| v. | ) | |
| FERETI SEMAIA, Warden (or Facility Administrator), Adelanto ICE Processing Center; THOMAS GILES, Field Office Director, U.S. Immigration and Customs Enforcement, Los Angeles Field Office; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States, | ) | **IMMEDIATE RELEASE REQUESTED**<br><br>Alien No. 246-421-820<br><br>Immigration Court: Adelanto |
| | ) | |
| Respondents. | ) | |

## I. INTRODUCTION

1. Petitioner KEYLIN CAROLINA GOMEZ is a 38-year-old native and citizen of Nicaragua who has lived in the United States for three years and nine months. She is married, employed, has filed federal and California income tax returns, has attended the same church in Pomona for three years, has an asylum application pending before the Department of Homeland Security, and has no criminal history of any kind. She is detained at the Adelanto ICE Processing Center, where she has been held for the past eighteen days.

2. On December 19, 2022, the Department of Homeland Security inspected Petitioner and stamped her immigration record "PAROLED — Until Feb. 17, 2023 — Purpose: 212(d)(5)." Ex. A. After that parole lapsed by its own terms, Petitioner reported in person to the ICE Los Angeles Field Office on February 21, 2023, as she had been instructed to do. Ex. B. The Government saw her, and let her go.

3. For the next three years and seven months — 1,312 days — the Government left Petitioner at liberty. It knew where she lived: she gave ICE her home address and cellular telephone number in writing, Ex. C, and United States Citizenship and Immigration Services mailed her notices and took her biometrics, Ex. D. It knew her case was active: it accepted the $100 annual fee on her pending asylum application as recently as November 15, 2025. Ex. E. During those years Petitioner worked, paid her taxes, Ex. F, and attended church, Ex. G. Respondents never sought her detention, never imposed a condition of supervision, and never made any finding that she posed a danger or a flight risk.

4. On September 21, 2026, Respondents ordered Petitioner to appear at the ICE Los Angeles Field Office at 7:00 a.m. Ex. J. She appeared, as she always had. By 8:59 a.m. an immigration officer had signed a form detaining her. Ex. K. By 9:09 a.m. she had

been served with a notice of rights. Ex. L. She was in custody within two hours of complying with a Government order, and she has been in custody ever since.

5. Petitioner received no notice that her liberty was at risk. She was given no opportunity to be heard before she was taken into custody. No neutral decisionmaker reviewed the decision before it was executed. And Respondents have never identified — not in the Notice of Custody Determination, not in the Notice to Appear, not anywhere in the record — a single circumstance that changed between February 21, 2023, when they let her go, and September 21, 2026, when they locked her up.

6. Respondents' own paperwork states the authority on which they acted. The Notice of Custody Determination recites that it issues "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." Ex. K. Section 236(a), 8 U.S.C. § 1226(a), is permissive: the Attorney General "may" detain. Respondents chose to detain, and the Constitution required them to give Petitioner process before they did.

7. That same paperwork also contradicts itself. The Notice to Appear served on Petitioner the morning of her arrest alleges that she "was not then admitted or paroled after inspection by an Immigration Officer," Ex. M ¶ 4, and charges her as an alien "present in the United States without being admitted or paroled" under INA § 212(a)(6)(A)(i). The Government's own parole stamp, affixed by its own officer at the Rio Grande Valley sector, says otherwise. Ex. A.

8. Petitioner does not ask this Court to review her removal proceedings, to decide her asylum claim, or to review any custody determination made by an immigration judge. She asks this Court to decide a single constitutional question: whether the Government may extinguish three years and seven months of liberty that it deliberately permitted, without notice, without a hearing, and without identifying anything that changed. It may not. The writ should issue and Petitioner should be released.

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241(a) and (c)(3), which authorize the federal courts to grant writs of habeas corpus to persons held in custody in violation of the Constitution or laws of the United States. See Hernandez v. Sessions, 872 F.3d 976, 987-88 (9th Cir. 2017). Jurisdiction is also proper under 28 U.S.C. § 1331 and the Suspension Clause, U.S. Const. art. I, § 9, cl. 2.

10. 8 U.S.C. § 1226(e) does not bar this action. That provision "does not limit habeas jurisdiction over constitutional claims or questions of law." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011). Petitioner raises only constitutional claims and questions of law.

11. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

12. Venue is proper in the Central District of California under 28 U.S.C. § 2241(d) because Petitioner is physically detained within this District, at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301. Adelanto is located in San Bernardino County, which lies within the Eastern Division. 28 U.S.C. § 84(c).

## III. PARTIES

13. Petitioner KEYLIN CAROLINA GOMEZ is a native and citizen of Nicaragua, born April 14, 1988, in Masaya, Nicaragua. Ex. I. She is assigned Alien Registration Number 246-421-820. She resides at 1342 South Main Street, Pomona, California 91766, and is presently detained at the Adelanto ICE Processing Center.

14. Respondent FERETI SEMAIA is sued in his official capacity as Warden (or Facility Administrator) of the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301. He is Petitioner's immediate physical custodian.

15. Respondent THOMAS GILES is sued in his official capacity as Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Los Angeles Field Office, 300 North Los Angeles Street, Room 7621, Los Angeles, California 90012. He, or his successor or acting designee, exercises legal custody over Petitioner.

16. Respondent DAVID VENTURELLA is sued in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, 500 12th Street SW, Washington, D.C. 20536.

17. Respondent MARKWAYNE MULLIN is sued in his official capacity as Secretary of the U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Avenue SE, Washington, D.C. 20528. He is the official charged with administration of the immigration laws.

18. Respondent TODD BLANCHE is sued in his official capacity as Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED

19. Exhaustion of administrative remedies is not a jurisdictional prerequisite to relief under 28 U.S.C. § 2241. Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because § 2241 contains no statutory exhaustion requirement, the requirement is prudential and may be waived in this Court's discretion. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Waiver is appropriate where administrative remedies are inadequate or not efficacious, where pursuing them would be futile, where irreparable injury may occur without immediate judicial relief, or where the administrative proceeding would be void. Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

20. Waiver is warranted here because the available administrative procedures cannot adequately resolve the constitutional challenge presented, and requiring their completion would prolong the injury Petitioner seeks to end.

21. First, the Petition does not seek review of any custody determination made by an immigration judge. It challenges the constitutionality of the manner in which Respondents seized Petitioner's liberty — without notice, without a hearing, and without identifying changed circumstances. That question is not before the immigration court, and the Board of Immigration Appeals could not decide it in any event: the Board "lack[s] jurisdiction to rule on the constitutionality of the Act and the regulations" it administers. In re Fuentes-Campos, 21 I&N Dec. 905, 912 (BIA 1997); accord Padilla-Padilla v. Gonzales, 463 F.3d 972, 977 (9th Cir. 2006).

22. Second, the availability of a bond hearing does not resolve the legality of the detention challenged here. Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026), holds that noncitizens present without admission who are apprehended in the interior are governed by the detention regime of 8 U.S.C. § 1226 rather than § 1225(b)(2)(A). Consistent with that decision and Respondents' own designation of her custody under § 1226(a), Petitioner is entitled to seek an individualized bond hearing. That entitlement does not answer whether Respondents lawfully deprived her of her previously enjoyed liberty without notice, a prior hearing, or an identified change in circumstances. A later bond hearing, or release conditioned on payment of a bond, does not cure the constitutional violation alleged in this Petition.

23. This Petition invokes the traditional function of habeas corpus: securing release from unlawful custody. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973); 28 U.S.C. §§ 2241(c)(3), 2243. Petitioner seeks immediate and unconditional release to restore the liberty she enjoyed before September 21, 2026, without payment of a bond or conditions of supervision. The inadequacy of administrative relief follows from the constitutional injury alleged, not merely from Petitioner's preference for a particular remedy. As set forth in Count One, a post-deprivation custody proceeding cannot supply

the process that was due before her detention. Administrative review of bond eligibility therefore would not adequately remedy that injury. Together with the irreparable harm from continued confinement, this supports waiver of prudential exhaustion under Laing, 370 F.3d at 1000. Petitioner requests that the Court excuse any uncompleted administrative exhaustion and decide the legality of her detention now.

24. Third, requiring exhaustion would inflict irreparable injury. In 2024, Executive Office for Immigration Review data showed an average processing time of 204 days for bond appeals. Rodriguez Vazquez v. Bostock, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025), aff'd, 183 F.4th 1160 (9th Cir. 2026). The Board's pending caseload "increased more than five-fold — from 37,285 pending appeals to 202,946 pending appeals" between fiscal year 2015 and the end of fiscal year 2025, while its authorized membership was reduced to fifteen. Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5269 n.4, 5270 (Feb. 6, 2026). Petitioner is a diabetic who requires daily medication; every month of administrative delay is a month of unlawful confinement that no later order can give back.

## V. FACTUAL BACKGROUND

### A. The Government Inspected Petitioner and Paroled Her Into the United States.

25. Petitioner entered the United States on December 19, 2022, near Hidalgo, Texas. Ex. A. She was encountered by the Department of Homeland Security and processed at the Rio Grande Valley sector. Id.

26. DHS did not return her to Mexico and did not place her in expedited removal. It inspected her and paroled her. Her immigration record bears a Department of Homeland Security stamp reading: "PAROLED — Until Feb. 17, 2023 — Purpose: 212(d)(5) — 12/19/22 — RGV," signed by the processing officer. Ex. A. Parole under INA § 212(d)(5), 8 U.S.C. § 1182(d)(5), is an affirmative, discretionary determination by the Government that an individual may be released into the United States.

27. Petitioner was released and instructed to report to an ICE office. Ex. A.

**B. Petitioner Reported as Instructed, and the Government Left Her at Liberty for Three Years and Seven Months.**

28. Petitioner’s parole expired by its own terms on February 17, 2023. Four days later, on February 21, 2023, she appeared in person at the ICE Los Angeles Field Office, 300 North Los Angeles Street, pursuant to a scheduled appointment, confirmation number FOAS0226973. Ex. B.

29. Respondents saw Petitioner on that date, with no parole then in force, and did not detain her. They made no finding that she posed a danger to the community or a risk of flight. They imposed no bond, no electronic monitoring, no Intensive Supervision Appearance Program enrollment, and no order of supervision. They released her.

30. At a subsequent appointment, Petitioner completed an ICE appointment reschedule form in her own handwriting, giving the agency her residential address in Pomona and her cellular telephone number. Ex. C. Respondents therefore knew, in writing and from Petitioner herself, exactly where she lived and how to reach her.

31. Petitioner filed an application for asylum and for withholding of removal, Form I-589, receipt number MGL2486590255. Ex. D. On January 11, 2024, she appeared at the USCIS Application Support Center in Pomona, California, and submitted her biometrics; the notice bears the agency’s processing stamp for that date. Id.

32. On November 15, 2025 — ten months before her arrest — Petitioner paid the $100.00 annual fee on her pending asylum application. Ex. E. The Government accepted the payment.

33. At no time between December 19, 2022 and September 21, 2026 did Petitioner fail to appear at any appointment, fail to appear at any hearing, abscond, or receive any notice that her liberty was in question.

**C. Petitioner's Life in Pomona.**

34. Petitioner is married to Manuel Enrique Arévalo Soza. They were married in Managua, Nicaragua, on December 26, 2021. Ex. H. They reside together at 1342 South Main Street, Pomona, California 91766.

35. Petitioner and her husband filed a joint federal income tax return for tax year 2025, prepared by HJ Enterprise of Azusa, California, and filed electronically; they also filed a California return. Ex. F. Petitioner holds a Social Security number and, until her arrest, held an Employment Authorization Document and a California identification card.

36. Petitioner has attended Iglesia Ríos de Agua Viva, 1395 West Mission Boulevard, Pomona, California, for three years. Her pastor writes that she "has been of good testimony to her fellow church goers and has been faithful to the church." Ex. G.

**D. The September 21, 2026 Detention.**

37. Respondents directed Petitioner to appear at the ICE Los Angeles Field Office, 300 North Los Angeles Street, Los Angeles, California, at 7:00 a.m. on September 21, 2026. The appointment confirmation, number FOAS0299152, directed her to bring a Form I-385, the appointment confirmation page, proof of address, and her identification documents. Ex. J.

38. Petitioner appeared as directed.

39. At 8:59 a.m. — one hour and fifty-nine minutes after the appointment began — a Supervisory Detention and Deportation Officer signed a Form I-286, Notice of Custody Determination, checking the box "Detained by the Department of Homeland Security." Ex. K. The form recites that it issues "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." Id. It contains no findings. It identifies no evidence. It states no

burden of proof. It does not mention flight risk, danger, or any change in Petitioner's circumstances.

40. At 9:09 a.m., ten minutes later, Petitioner was served with a Form I-826, Notice of Rights and Request for Disposition. Ex. L. She elected to request a hearing before the immigration court. Id.

41. The same morning, Respondents issued and served a Notice to Appear, Form I-862, with a continuation page, charging Petitioner as inadmissible under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). Ex. M. They also served a Form I-200 administrative warrant of arrest, the stated basis for which was "the execution of a charging document to initiate removal proceedings against the subject" — that is, the Notice to Appear executed that same morning. Ex. N.

42. Petitioner was transported to the Adelanto ICE Processing Center, where she remains. As of the filing of this Petition she has been detained for eighteen days.

43. Petitioner checked the box on the Form I-286 requesting review of the custody determination by an immigration judge. Ex. K. She did so after she was already in custody, because that was the first opportunity she was given.

**E. Respondents Have Identified No Changed Circumstance.**

44. No document Respondents have served on Petitioner identifies any change in her circumstances between February 21, 2023 and September 21, 2026. No document alleges that she violated any condition of release, missed any appointment, failed to appear at any hearing, committed any offense, or was arrested by any law enforcement agency.

45. Petitioner has no criminal history. She has never been arrested, charged, or convicted of any offense in the United States or in Nicaragua. No Government document in this record alleges otherwise.

**F. Health and Confiscated Documents.**

46. Petitioner has diabetes and hypertension. Both conditions require daily medication. She is receiving her care, if at all, from a detention facility approximately sixty miles from her home and her treating providers.

47. When Respondents detained Petitioner they took her Employment Authorization Document and her California identification card. Neither has been returned. Because Respondents hold these documents, Petitioner cannot produce them to this Court; they are identified in the exhibit index as reserved.

## VI. LEGAL FRAMEWORK

48. Respondents have designated Petitioner's custody under INA § 236, 8 U.S.C. § 1226. Ex. K; see also Ex. N (warrant directed to officers authorized under "sections 236 and 287"). That designation is correct. Petitioner was apprehended in the interior of the United States, at a federal office in Los Angeles, nearly four years after her entry. Noncitizens present without admission who are apprehended in the interior are subject to the detention regime of § 1226, not the mandatory-detention provision of 8 U.S.C. § 1225(b)(2)(A). Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026). A person whom the Government actually inspected and paroled, as Petitioner was, Ex. A, falls still further from § 1225(b)(2)(A).

49. Section 1226(a) is permissive. It provides that the Attorney General "may" arrest and detain a noncitizen pending a decision on removal, and "may" release the person on bond or conditional parole. 8 U.S.C. § 1226(a). Detention under § 1226(a) is therefore a discretionary choice, and like every exercise of the power to confine, it is bounded by the Due Process Clause.

50. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects."

Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Civil detention must "bear[] [a] reasonable relation to the purpose for which the individual [was] committed." Id. (quoting Jackson v. Indiana, 406 U.S. 715, 738 (1972)). In the immigration-detention context the Supreme Court identified two regulatory goals that can support civil confinement: ensuring the individual's appearance at future proceedings, and preventing danger to the community. Id. at 690-91.

51. The process due before the Government may effect such a deprivation is measured by the three factors of Mathews v. Eldridge, 424 U.S. 319, 335 (1976): the private interest affected; the risk of an erroneous deprivation under the procedures used and the probable value of additional safeguards; and the Government's interest, including the burden that added process would impose.

52. A protected liberty interest arises not only from a formal release order but from the Government's deliberate acquiescence in an individual's freedom. Courts in this District and elsewhere in the Circuit have so held even as to noncitizens who had never previously been detained. See Martinez v. Acting Warden of the Adelanto Det. Ctr., No. 5:26-cv-02635-ACCV, 2026 WL 2262269, at *5 (C.D. Cal. Aug. 5, 2026); Gagik T. v. Chestnut, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026); Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026).

53. Where the Government has already determined that detention is unnecessary, it may not reverse course absent changed circumstances. "[N]o change should be made by [the Department] absent a change of circumstance." Matter of Sugay, 17 I&N Dec. 637, 640 (BIA 1981); accord Saravia v. Sessions, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir. 2021) (unpublished; cited under Ninth Circuit Rule 36-3) ("[a]bsent changed circumstances … ICE cannot redetain").

## VII. CLAIMS FOR RELIEF

### COUNT ONE

### FIFTH AMENDMENT — DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS

54. Petitioner incorporates each preceding paragraph as though fully set forth herein.

**A. Procedural Due Process.**

55. Petitioner held a constitutionally protected liberty interest in remaining free. That interest arises from the Government's own conduct: it inspected her and paroled her into the country, Ex. A; it summoned her after that parole lapsed, saw her, and released her again, Ex. B; it took her address in writing and used it, Ex. C; it accepted her biometrics and her annual asylum fee, Exs. D-E; and for 1,312 days it treated her liberty as the status quo. That is deliberate acquiescence, and it creates a protected interest. Martinez v. Acting Warden, 2026 WL 2262269, at *5; Gagik T., 2026 WL 1837413; Kharitonova, 2026 WL 531441, at *2.

56. Respondents extinguished that interest with no process at all. Petitioner received no advance notice that her liberty was at risk. She was afforded no opportunity to be heard. No neutral decisionmaker reviewed the decision before it was carried out. No written determination explains it. The only document Respondents produced is a checkbox form signed at 8:59 a.m. that contains no findings whatever. Ex. K.

57. The Mathews factors each favor Petitioner.

58. Mathews factor one — the private interest — is at its maximum. The interest is physical liberty itself, Zadvydas, 533 U.S. at 690, and the liberty taken was not abstract. It was a settled life: a marriage, Ex. H; a home in Pomona; employment and tax

compliance, Ex. F; three years in one congregation, Ex. G; and a pending application for protection that Petitioner has prosecuted diligently and paid for, Exs. D-E. Detention also severed her from the medical care she requires for diabetes and hypertension.

59. Mathews factor two — the risk of erroneous deprivation — is severe, and the value of additional safeguards is obvious. The procedure Respondents used consisted of one officer checking one box. No evidence was weighed. No finding of flight risk or danger was made. No standard of proof was identified. Nothing was said about the three and a half years during which the same agency concluded, repeatedly and in writing, that Petitioner could remain free. The additional safeguard Petitioner seeks is the one the Constitution ordinarily requires: notice and an opportunity to be heard before the Government takes her liberty. Respondents bore that burden costlessly for 1,312 days by doing nothing.

60. Mathews factor three — the Government's interest — does not outweigh the first two. The legitimate interests in civil immigration detention are securing appearance and preventing danger. Zadvydas, 533 U.S. at 690-91. Petitioner has appeared at every appointment the Government ever set for her, including the one at which she was arrested, Exs. B, J; Respondents have had her address throughout, Ex. C; and nothing in this record suggests she is a danger to anyone. The administrative burden of providing notice and a hearing is modest, and Respondents have never suggested otherwise.

61. Respondents violated Petitioner's right to procedural due process under the Fifth Amendment, and her resulting custody is unlawful within the meaning of 28 U.S.C. § 2241(c)(3).

**B. Substantive Due Process.**

62. Independent of the procedures used, Petitioner's detention violates substantive due process because it bears no reasonable relation to any legitimate regulatory purpose. Zadvydas, 533 U.S. at 690 (quoting Jackson v. Indiana, 406 U.S. at 738).

63. Section 1226(a) is permissive, and Respondents had already exercised the discretion it confers — in Petitioner's favor — when they released her in December 2022 and again in February 2023. Having done so, they could not reverse that judgment without a change in circumstances. Matter of Sugay, 17 I&N Dec. at 640; Saravia, 280 F. Supp. 3d at 1196-97; Panosyan, 854 F. App'x at 788; see also Safi v. Noem, No. 2:26-cv-00308-TLF, 2026 WL 445564, at *3 (W.D. Wash. Feb. 17, 2026) (the standard "prevented arbitrary revocations and ensured that detention decisions rested on individualized assessments of changed circumstances rather than categorical assumptions").

64. Respondents have identified no changed circumstance. They cannot, because there is none: Petitioner committed no offense, missed no appointment, violated no condition, and gave Respondents no reason to revisit a judgment they had made and re-made over three and a half years. Detention imposed on an unchanged record serves neither of the purposes the Supreme Court has recognized. It is arbitrary, and it is unconstitutional.

**C. Prejudice.**

65. Petitioner has been prejudiced by the deprivation, and by being forced to litigate the lawfulness of her own confinement from inside a detention center. Detention "frustrate[s] a noncitizen's ability to obtain counsel," Biwot v. Gonzales, 403 F.3d 1094, 1099 (9th Cir. 2005), and imposes "substantial challenges" on a detainee litigating her own case, Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 778 (N.D. Cal. 2019). The standard is whether the defect could well have affected the outcome. Singh, 638 F.3d at 1205.

66. Here the prejudice is concrete. Petitioner is held roughly sixty miles from her home, her husband, her congregation, and her treating providers. Her diabetes and hypertension require daily medication and monitoring that was interrupted by her detention. The documents that establish her authorization to work and her identity — her Employment Authorization Document and her California identification card — are in

Respondents' possession, so she cannot produce them in her own defense. And the evidence most relevant to any custody determination — employer records, medical records, letters from her community — must be gathered by others on her behalf because she cannot gather it herself. Had Petitioner been given notice and an opportunity to be heard before she was taken into custody, she could have presented all of it.

**D. A Post-Deprivation Custody Hearing Would Not Cure the Violation.**

67. Petitioner anticipates that Respondents will contend that whatever process she was due was supplied by her ability to request review of the custody determination by an immigration judge, and by any custody hearing that has since occurred. The contention fails.

68. A hearing conducted after the Government has already seized a person's liberty "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." Khalsa v. Janecka, No. 5:26-cv-00623-CAS-AGR, 2026 WL 486670, at *7 (C.D. Cal. Feb. 19, 2026) (quoting E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)). Most courts to reach the question, including courts of this District, have held that a post-detention bond hearing does not cure a procedural due process violation arising from detention imposed without a pre-deprivation hearing. See Nurlan Gudavasov v. Marin, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); Mendoza v. Adelanto ICE Processing Ctr. Warden, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026); Martinez Lopez v. Dep't of Homeland Sec., No. 25-cv-03607-KK-ADS, 2026 WL 1365980, at *7 (C.D. Cal. Apr. 23, 2026); Orellana-Rivera v. Johnson, No. 5:26-cv-2116-HDV-AJR, Dkt. 18 at 2 (C.D. Cal. May 14, 2026).

69. To hold otherwise would permit the Government to manufacture a cure for every pre-deprivation violation simply by scheduling a hearing after the fact, rendering the pre-deprivation requirement meaningless. Mendoza, 2026 WL 1480247, at *4.

70. Respondents will likely rely on Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022), in which the Ninth Circuit concluded that the existing agency procedures

sufficiently protected that petitioner's liberty interest and mitigated the risk of erroneous deprivation. Rodriguez Diaz does not control. The petitioner there challenged the adequacy of the bond procedures he actually received; Petitioner challenges the Government's failure to give her any process at all before taking her into custody. The panel was explicit that its holding was limited: "In so holding, we do not foreclose all as-applied challenges to § 1226(a)'s procedures." Id. This is such a challenge, and it rests on the pre-deprivation side of a line Rodriguez Diaz did not cross.

71. Nor does any immigration judge's custody ruling moot this Petition. A claim is moot only where there is "no longer a possibility" of relief, Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 521 (9th Cir. 1999), and only where no "effectual relief whatever" can be granted, Calderon v. Moore, 518 U.S. 149, 150 (1996). Petitioner seeks outright release, which remains fully available to this Court.

72. The remedy for a constitutional violation must restore Petitioner "to the position [s]he would have been in if the constitutional violation never occurred." Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up); see Chowdhury v. Lyons, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo"); United States v. Morrison, 449 U.S. 361, 364 (1981) ("remedies should be tailored to the injury suffered"). That principle has particular force where, as here, the protection at issue exists to prevent an unlawful detention in the first place.

## COUNT TWO

## 8 U.S.C. § 1226(a) — DETENTION WITHOUT AN INDIVIDUALIZED CUSTODY DETERMINATION

73. Petitioner incorporates each preceding paragraph as though fully set forth herein.

74. Detention under 8 U.S.C. § 1226(a) requires an individualized determination that detention is warranted. The statute authorizes, but does not compel, custody, and the Government must actually exercise the discretion Congress conferred.

75. Respondents made no individualized determination. The Form I-286 is a preprinted form on which a single box was checked. Ex. K. It records no consideration of Petitioner's three years and nine months of residence, her marriage, her employment, her tax compliance, her church, her perfect record of appearance at every appointment the agency set, her pending asylum application, her absence of any criminal history, or her medical conditions. It records nothing at all.

76. Petitioner's detention therefore violates 8 U.S.C. § 1226(a) and the regulations implementing it, and her custody is unlawful under 28 U.S.C. § 2241(c)(3).

**COUNT THREE**

**FIFTH AMENDMENT — DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS**

77. Petitioner incorporates each preceding paragraph as though fully set forth herein.

78. When Respondents detained Petitioner they took and retained her Employment Authorization Document and her California identification card. They provided no process before doing so and have identified no lawful basis for continuing to hold them.

79. These documents are not contraband. They are the instruments by which Petitioner establishes her identity and her authorization to work, and their retention impairs her ability to resume her life upon release and to participate in her own immigration proceedings. Their continued retention without process violates the Fifth Amendment, and this Court should order their return.

## VIII. RELEASE BY THIS COURT IS THE ONLY ADEQUATE REMEDY

80. The violation Petitioner alleges is the absence of process before the Government took her liberty. That violation was complete the moment she was taken into custody on September 21, 2026, and no proceeding held afterward can undo it. Khalsa, 2026 WL 486670, at *7; Gudavasov, 2026 WL 712827, at *3.

81. A remand for a further custody hearing would therefore not remedy the injury. It would supply, after the fact, the very thing whose absence is the constitutional violation — and it would leave Petitioner detained in the meantime, on a record in which Respondents have never identified a reason for her confinement.

82. The relief that fits the injury is release. Lujan, 734 F.3d at 935; Morrison, 449 U.S. at 364; V.K. v. Noem, No. 5:26-cv-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (return to "the last uncontested status which preceded the pending controversy"). Petitioner asks to be returned to the position she occupied on September 20, 2026: at liberty, at home in Pomona, appearing when the Government tells her to appear — as she has done every time she has been asked. Petitioner requests immediate and unconditional release, without payment of a bond or conditions of supervision, to restore that status quo.

83. Petitioner does not ask this Court to review her removal proceedings, to adjudicate her asylum application, to review any order of the immigration court, or to enjoin her removal. She asks only that the Court remedy an unconstitutional detention.

## IX. DECLARATORY RELIEF

84. An actual and justiciable controversy exists between Petitioner and Respondents concerning the lawfulness of her detention. Petitioner is entitled to a declaration of her rights under 28 U.S.C. §§ 2201 and 2202 that Respondents' seizure of her liberty without notice, without an opportunity to be heard before a neutral

decisionmaker, and without any identified change in circumstances violated the Due Process Clause of the Fifth Amendment.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. ISSUE an Order to Show Cause, returnable within three (3) days pursuant to 28 U.S.C. § 2243, directing Respondents to show cause why the writ should not be granted;

2. ISSUE a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately and unconditionally from custody, without requiring payment of a bond or imposing conditions of supervision;

3. DECLARE, pursuant to 28 U.S.C. §§ 2201 and 2202, that Respondents' detention of Petitioner without notice, without an opportunity to be heard before a neutral decisionmaker, and without any identified change in circumstances violated the Due Process Clause of the Fifth Amendment;

4. ENJOIN Respondents from re-detaining Petitioner on the basis of the same facts, absent notice and a hearing before a neutral decisionmaker at which Respondents bear the burden of establishing a material change in circumstances;

5. ORDER Respondents to return to Petitioner her Employment Authorization Document, her California identification card, and any other personal property taken from her on September 21, 2026;

6. ORDER Respondents to file a status report within three (3) days of the Court's order confirming Petitioner's release and the return of her property;

7. AWARD Petitioner her reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, to be requested by a properly filed separate motion; and

8. GRANT such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 13, 2026

*Christopher J. DeSalva*

**CHRISTOPHER JOSEPH DESALVA**

Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, CHRISTOPHER JOSEPH DESALVA, declare as follows:

1. I am an attorney licensed to practice law in the State of California, State Bar Number 172209, and I am counsel of record for Petitioner Keylin Carolina Gomez in this matter.

2. Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, and is unable to verify this Petition personally.

3. Pursuant to 28 U.S.C. § 2242, which permits a petition for a writ of habeas corpus to be signed and verified by someone acting on the detained person's behalf, I verify this Petition on Petitioner's behalf.

4. I have reviewed the immigration records, the exhibits submitted herewith, and information provided by Petitioner and her family. The factual allegations of this Petition are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 13, 2026, at Indio, California.

Christopher J. DeSalva

**CHRISTOPHER JOSEPH DESALVA**

Attorney for Petitioner

**CERTIFICATE OF SERVICE**

I, Dr. Victor M. Viruena, acting on behalf of Christopher J. DeSalva, Esq., hereby certify that on the date set forth below I caused the foregoing VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241, together with the exhibits submitted herewith, pertaining to Alien Number 246-421-820, to be filed electronically with the Clerk of the United States District Court for the Central District of California using the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all Respondents and all counsel of record, including the United States Attorney's Office for the Central District of California as counsel for the named Respondents. Service is complete upon electronic filing pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule 5-3.2.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Dated: October 13, 2026

Dr. Victor Viruena

**Dr. Victor M. Viruena**

On behalf of Christopher J. DeSalva